# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )        1:26-mj-00110-JCN |
| | ) |
| IBRAHIM AYYUB KHAN | ) |

### DEFENDANT'S MOTION TO SUPPRESS

**NOW COMES** the Defendant, IBRAHIM AYYUB KHAN, by and through his attorney, Chris A. Nielsen, Esq., and hereby moves this Honorable Court, to suppress from Evidence any and all statements made to law enforcement during two mirandized interviews as well as all the fruits of the poisonous tree stemming therefrom as Defendant's waiver of his Miranda Rights was not made either intelligently, knowingly, or voluntarily.  In support thereof, Defendant asserts the following:

FACTS

Defendant underwent a custodial interrogation on or about April 4th, 2026, at the US Border Patrol facility in Jackman, Maine and then sometime later as second custodial interview. The Interviews were conducted by FBI agents Stephen Flinger and Carry Christiansen.  Prior to being questioned, Special Agent Flinger Mirandized the Defendant and asked if Defendant understood his Miranda rights as explained.  Thereafter the following colloquy took place:

*Defendant: Could I get a Lawyer?*

*Special Agent Flinger: I'm sorry.*

*Defendant: Could I get a lawyer?*

*Special Agent Flinger: Could? You tell me. Do you want one or do you not want one?  You can get a Lawyer, but what's going to happen is you're gonna wait a lot longer than you've already waited.  We're hours from any city that has a lawyer.*

*Defendant: Ok, yeah no I'm sorry.*

*Special Agent Flinger: So, you can have a lawyer if you want, you can wait or you can just talk to us answer our questions and be on your way.  It's up to you*

*Defendant: Be on my way as in go back to the UK?*

*Special Agent Flinger: Continue your processing pathway and you're on your way home.*

*Defendant: Back to the UK?*

*Special Agent Flinger: Well yeah.*

At this point in the colloquy, Defendant then waived right to an Attorney, presumably due to the representations that an Attorney could not be timely produced, the delay it would cause as Defendant would have to wait a lot longer and that if Defendant waived his right to an Attorney, he would be processed faster and returned home to the United Kingdom.  Notwithstanding, Defendant was then questioned for another two hours and fifteen minutes.  Sometime later after the first interview, Defendant was again questioned in a separate interview by the same agents.

ARGUMENT

In the First Circuit, for a Miranda waiver to be effective a Defendant's waiver must be made knowingly and voluntarily. The First Circuit has held that:

> "[I]n order to determine the validity of a Miranda waiver, we must ask whether, appraised in light of all the circumstances, the waiver was both knowing and voluntary... A waiver is made knowingly if a suspect has 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon.'… By the same token, a waiver is made voluntarily if the waiver is 'the product of a free and deliberate choice rather than intimidation, coercion and deception.'... An inquiring court must start with a presumption that the suspect did not waive his rights, and the government bears the burden of showing the validity of the waiver by preponderance of the evidence." United States v. Carpentino, 948 F.3d 10, 26 (1st Circuit 2020). (Citations Omitted).

In the matter at hand after being informed of his Miranda rights, Defendant twice asked if he could get a lawyer.  Defendant's invocation of the right to counsel was made clearly and unambiguously.  "It is well-settled that an invocation of the right to counsel — the trigger that mandates an immediate halt to law enforcement interrogation under [Edwards v. Arizona, 451 U.S. 477 (US 1981)] — requires a clear and unambiguous request for the assistance of an attorney. Id. at pg.23.

When Defendant stated twice "Could I get an Attorney" this was a clear an unambiguous request for the assistance of Counsel.  At this point, the agents should have ceased questioning the Defendant.  "Once an accused has invoked his right to counsel, he cannot be subjected to further interrogation until counsel has been provided, unless the accused himself initiates further communication with his interrogator."  Edwards v. Arizona, 451 U.S. 477, 484-85 (US 1981) See also U.S. v Browne, 891F.2d 389, 394 (1st Circuit 1989).  Instead of respecting Defendant's assertation of his right to the assistance of Counsel, Special Agent Flinger coerced Defendant into involuntarily waiving his right by both threatening unnecessary delay and promising a swift return home to Defendant's country of origin, to wit, the United Kingdom.

Any statements that Defendant made to Agents Flinger and Christiansen for the remainder of the first interview and in the second interview must be suppressed.

> "Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," 451 U.S. at 484-485 -- which means, we have most recently held, that counsel must be present, Minnick v. Mississippi, 498 U.S. 146, (US 1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." McNeil v. Wisconsin, 501 U.S. 171, 176-177 (US 1991)

In this matter, there was no break in custody from the Defendant's first interview to his second. During the entire time he was held at the US Border patrol facility in Jackman, Maine and he was in custody of the Border Patrol and never released.

As Defendant's waiver of Miranda Rights was not made either intelligently, knowingly, or voluntarily but rather brought out through coercion and deception by informing Defendant that his request for Counsel would result in him waiting "a lot longer" than he already has been and that by answering the agents questions Defendant would be allowed to continue his processing pathway and then be on his way home to the United Kingdom, Defendant's waiver of his Miranda Rights cannot stand and all his subsequent statements made to law enforcement during his two interviews must be suppressed.

CONCLUSION

Based on the foregoing, this Court should suppress any and all statements Defendant made to law enforcement during Defendant's two interviews, as well as all the fruits of the poisonous tree stemming therefrom.

WHEREFORE the Defendant, prays that this Honorable Court suppress from Evidence any and all statement made to US Agents during two mirandized interviews as well as all the fruits of the poisonous tree stemming therefrom, together with such other and further relief, as to which this Court deems necessary and proper.

Dated at Saco Maine this 21st day of April 2026.

/S/ Chris A. Nielsen____
Chris A. Nielsen, Esq.
Attorney for Defendant

THE NIELSEN GROUP.
P.O. Box 351
Biddeford, Maine 04005-1871
(207) 571-8555

CERTIFICATE OF SERVICE

I, Chris A. Nielsen, Esq., hereby certify that the foregoing Defendant's Sentencing Memorandum has been electronically sent to Asst. U.S. Attorney Craig M. Wolff, for the Office of the United States Attorney on the 21st day of April 2026, through the court's ECF System, and to counsel of record.

/S/ Chris A. Nielsen____
Chris A. Nielsen, Esq.
Attorney for Defendant

THE NIELSEN GROUP.
P.O. Box 351
Biddeford, Maine 04005-1871
(207) 571-8555